IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LLORÉNS PHARMACEUTICAL, INC.,<br><br>      Plaintiff<br><br>      v.<br><br>NOVIS PR, INC.,<br><br>      Defendant | CIVIL NO. 04-2188 (JP) |

**OPINION AND ORDER**

Before the Court are Defendant Novis, PR, Inc.'s ("Novis") motions for contempt (**Nos. 51 and 66**), and Plaintiff Lloréns Pharmaceutical, Inc.'s ("Lloréns Inc.") oppositions thereto (Nos. 60 and 67).[1] Defendant Novis alleges that Plaintiff Lloréns Inc. has violated the terms of the consent Judgment agreed to by the parties (No. 48) by marketing pharmaceutical products as generic equivalents of certain products sold by Novis. For the reasons stated herein, Defendant's motions for contempt are hereby **DENIED**.

**I.   INTRODUCTION AND BACKGROUND**

By way of background, Plaintiff Lloréns Inc. filed the instant lawsuit pursuant to the Lanham Act, 15 U.S.C. § 1117 and 1125, and Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31,

---

1. Also before the Court are Defendant's reply (No. 62) and Plaintiff's motion for leave to file sur-reply (No. 64), and Defendant's supplemental motion (No. 65). Plaintiff's motion for leave to file sur-reply (**No. 64**) is **GRANTED** and the Court will consider the tendered sur-reply. Defendant's supplemental motion (**No. 65**) is **NOTED** and the Court will consider the evidence contained therein in its analysis of the motions for contempt.

CIVIL NO. 04-2188 (JP)          -2-

§ 5141, for Defendant Novis' alleged trademark infringement and unfair methods of competition.  Specifically, Lloréns Inc. alleged that it held the trademark for DOLOGESIC, a prescription pain reliever, and that Novis was infringing upon its trademark by marketing a confusingly similar product, DOLEGEN, as a generic equivalent of DOLOGESIC.

Defendant Novis filed a counterclaim alleging that Plaintiff Lloréns had violated an agreement between the parties regarding a different product, Proteinex.  Novis alleged that the parties had agreed that Lloréns Inc. would discontinue sales of Proteinex, which is similar to a Novis product called Pre-Protein.  The Court dismissed the counterclaim without prejudice (No. 31), concluding that aside from the fact that both claims involved the same parties, the Court found no further indication that the allegations contained in the counterclaim and the original complaint arose from a common nucleus of operative fact.

After discovery was conducted, the Court held a status conference. At the conference, the parties reached a settlement, and the Court entered a consent Judgment (No. 48).  The Judgment stated, *inter alia*,

> Both parties agree that the parties hereto and any
> subsidiaries, the owners, shareholders, representatives,
> and any and all agents and assigns thereof shall refrain
> from distributing and marketing any products as the
> generic equivalents of their respective products,
> including but not limited to Dologen and Dologesic.

CIVIL NO. 04-2188 (JP)            -3-

Defendant Novis now alleges that Plaintiff Lloréns Inc. is violating the terms of the settlement by marketing products as generic equivalents of Novis products.

Novis' allegations in its motions for contempt relate to the activities of two corporations that Novis alleges to be connected to José Lloréns, the president of Plaintiff Lloréns Inc.  First, Novis alleges that Pharmaceutical Generic Developers, Inc. ("PGD") is selling a product called Clusinex Plus, marketing it as a generic equivalent of Novis' product, Apetigen, and is also selling Genetuss Pediatric, marketed as a generic of Novis' Suppress-DX.  The parties agree that José Lloréns is the owner of 50% of PGD's shares.  However, the parties disagree over the extent to which José Lloréns controls the activities of PGD.  José Lloréns alleges that he is in a legal dispute with the co-owner of PGD, and that he has actively sought termination of all operations by PGD.  Novis does not dispute the existence of the litigation between José Lloréns and the PGD co-owner, but argues that José Lloréns is nevertheless responsible for the actions of the company in which he owns 50% of the shares.

The second corporation at issue in Novis' allegations is a Florida business called Advanced Generic Corporation ("AGC").  Novis alleges that this corporation has also been selling generic equivalents of Novis products.  Novis further alleges that the sole director and resident agent of AGC is José Lloréns' son in law,

CIVIL NO. 04-2188 (JP)          -4-

José H. Hernández ("Hernández").  Novis also alleges that the building in which AGC operates is owned by José Lloréns, and that the office adjacent to AGC is occupied by Lloréns Pharmaceutical International, an affiliate of Plaintiff Lloréns Inc.  Lloréns Inc. alleges that it is not accountable for the actions of AGC, and that José Lloréns merely leases a space in the building that he owns to AGC, which is an entirely independent business.

## II.  **LEGAL STANDARD FOR CONTEMPT**

The United States Supreme Court has held that a court order must be obeyed, even if it is later found to be improper or unconstitutional, until it is vacated or amended pursuant to the proper judicial process.  <u>Maness v. Meyers</u>, 419 U.S. 449, 458-59 (1975); <u>In re Providence Journal Co.</u>, 820 F.2d 1342, 1346 (1st Cir. 1986).  Exceptions to this general rule exist if the court lacks personal or subject matter jurisdiction or if the order is "transparently invalid," such as those that force a person to give up an irretrievable right.  <u>Vakalis v. Shawmut</u>, 925 F.2d 34, 36-37 (1st Cir. 1991); <u>In re Providence Journal Co.</u>, 820 F.2d at 1346-47.  It is well established that a court possesses the authority to hold a party in contempt for failure to comply with a court's order.  <u>Shillitani v. United States</u>, 384 U.S. 364, 370 (1966); <u>Goya Foods, Inc. v. Wallack Mgmt. Co.</u>, 290 F.3d 63, 77 (1st Cir. 2002).  A court's authority to impose contempt sanctions is a powerful tool

CIVIL NO. 04-2188 (JP)          -5-

that must be exercised only upon "clear and convincing evidence" that the offending party was actually in contempt of court. Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 16 (1st Cir. 1991).

The United States Court of Appeals for the First Circuit has set forth the following four requirements that must be met to hold a party in civil contempt of court: (1) the contemnor must have had notice of the court order; (2) the order must have been "clear, definite, and unambiguous"; (3) the contemnor must have had the ability to comply with the order; and (4) the contemnor must have violated the order. United States v. Saccoccia, 433 F.3d 19, 26 (1st Cir. 2005).

### III. **ANALYSIS**

Defendant Novis moves the Court to enter an order of contempt against Plaintiff Lloréns Inc., its president José Lloréns, nonparty corporations PGD and AGC, and "any other person doing business with or for José . . . Lloréns" (No. 66). The Court will first consider the allegations regarding José Lloréns and Plaintiff Lloréns Inc. before proceeding to analyze the request for contempt against the additional nonparties.

**A.   José C. Lloréns and Lloréns Pharmaceutical, Inc.**

**1.   Notice of the Order**

With regard to the first element of the standard for a finding of contempt, there is clear and convincing evidence that Lloréns Inc.

CIVIL NO. 04-2188 (JP)          -6-

and José Lloréns had notice of the consent Judgment.  Lloréns Inc. was a party to the litigation and agreed to the terms of the settlement, as indicated by the signature of Lloréns Inc.'s attorney on the consent Judgment.  José Lloréns is the president of Lloréns Inc., and was the company's president during the original litigation. José Lloréns participated in the litigation, including providing a statement under penalty of perjury corroborating the allegations of the complaint.  Under these circumstances, the Court finds that both Lloréns Inc. and José Lloréns had notice of the consent Judgment.

### 2.   **Clear, Definite, Unambiguous Order**

With regard to the second element of the standard for contempt, the consent Judgment stated, *inter alia*,

> Both parties agree that the parties hereto and any subsidiaries, the owners, shareholders, representatives, and any and all agents and assigns thereof shall refrain from distributing and marketing any products as the generic equivalents of their respective products, including but not limited to Dologen and Dologesic.

This language leaves no question as to the actions that it permits. Both parties – Lloréns Inc. and Novis – agree that they will not market any products as the generic equivalents of the other party's products.

In addition, any subsidiaries, owners, shareholders, representatives, agents, and assigns of Lloréns Inc. and Novis are bound by the same obligations as the Lloréns Inc. and Novis.  While there could be some question as to whether a particular individual

CIVIL NO. 04-2188 (JP)          -7-

or entity falls within one of the categories of additional persons bound by the Judgment, there is no such question with regard to Lloréns Inc. or José Lloréns. The Judgment applies to Lloréns Inc. because the company is one of the "parties hereto." The Judgment also applies to José Lloréns, because he is an owner, shareholder, representative, and agent of Lloréns Inc. Because there is no ambiguity as to the type of action prohibited or as to whether such prohibition applies to Lloréns Inc. and José Lloréns, the Court finds that the second element of the contempt standard is satisfied with regard to Lloréns Inc. and José Lloréns.

### 3. Ability to Comply with Order

The third element of the contempt standard requires a showing that the contemnor had the ability to comply with the order. With regard to Lloréns Inc., Plaintiff offers no arguments suggesting that the company would for any reason be prevented from complying with the consent Judgment. Accordingly, the Court finds that Lloréns Inc. had the ability to comply with its obligation to refrain from selling generic equivalents of Novis products.

With regard to José Lloréns, the Court finds that nothing impedes his ability to personally refrain from engaging in the prohibited activities of marketing and selling generic equivalents of Novis products. However, the evidence is not clear and convincing that José Lloréns has the ability to ensure that other corporations

CIVIL NO. 04-2188 (JP)          -8-

and individuals do not market generic equivalents of Novis products.

Novis argues that José Lloréns has the power to prevent PGD from marketing such products because he is a 50% shareholder of PGD. Assuming, *arguendo*, that José Lloréns could be held in contempt on the basis of sales of prohibited products by a corporation he controls, the evidence nevertheless indicates that José Lloréns does not control the activities of PGD. The parties both acknowledge that José Lloréns is in a legal dispute with the other 50% shareholder of PGD, and that in said dispute José Lloréns has requested and obtained a court order for dissolution of PGD. The dissolution order is being appealed to the Supreme Court of Puerto Rico, and therefore the company is currently still in existence. Novis has not explained how José Lloréns could go about forcing a more rapid cessation of PGD's activities. José Lloréns has actively litigated to seek dissolution of PGD, first in the Puerto Rico Court of First Instance, subsequently in the Puerto Rico Court of Appeals, and now in the Supreme Court of Puerto Rico. On the basis of this evidence, the Court finds that the activities of PGD cannot result in contempt against José Lloréns because the facts fail to satisfy the third element of the standard for contempt – the contemnor's ability to comply with the order.

CIVIL NO. 04-2188 (JP)          -9-

### 4.  Violation of the Order

Because the Court has found that Lloréns Inc. and José Lloréns had notice of the consent Judgment, that the Judgment was clear and unambiguous, and that Lloréns Inc. and José Lloréns had the ability to comply with the order at least with regard to their own actions, we shall proceed to consider whether the evidence satisfies the fourth element which requires a showing that they in fact violated the Judgment.

Novis makes no allegations that Lloréns Inc. is marketing or selling any products as generic equivalents of Novis products. Therefore, there is no showing of a violation of the Judgment by Lloréns Inc. and the fourth element of the contempt standard is not satisfied. Accordingly, the Court will deny Novis' motion to find Lloréns Inc. in contempt.

With regard to José Lloréns, Novis also does not allege that he himself is marketing or selling prohibited products. To the extent that Novis seeks to hold José Lloréns accountable for the actions of others including PGD, AGC, or Hernández, such an argument would depend upon a theory of alter ego permitting piercing of the corporate veil to ignore formal distinctions between José Lloréns and the other entities. See, e.g., Federal Deposit Ins. Corp. v. Martínez Almódovar, 671 F. Supp. 851, 876-77 (D.P.R. 1987) (citing Town of Brookline v. Gorsuch, 667 F.2d 215 (1st Cir. 1981)).

CIVIL NO. 04-2188 (JP)          -10-

However, an alter ego claim of this sort extends beyond the scope of the common nucleus of facts forming the original case or controversy in the instant action. Therefore, the Court lacks ancillary jurisdiction to hear Novis' alter ego theory at this juncture. See Peacock v. Thomas, 516 U.S. 349 (1996). Novis' pursuit of said theory would require a lawsuit with a separate jurisdictional basis. Id. at 357-58.

In the absence of clear and convincing evidence that either Lloréns Inc. or José Lloréns has violated the consent Judgment by marketing or selling products as generic equivalents of Novis products, the Court **DENIES** Novis' motion to hold Lloréns Inc. and José Lloréns in contempt.

### B.   Enforcement Against Additional Nonparties

Novis also argues that additional nonparties PGD, AGC, and "any other person doing business with or for José . . . Lloréns" (presumably referring to AGC's director Hernández) should be found in contempt for violating the terms of the consent Judgment. A direct application of the four elements of the First Circuit's contempt standard does not support the conclusion that said parties may be held in contempt. Saccoccia, 433 F.3d at 26.

#### 1.   Notice of the Order

With regard to the first element, the notice requirement, the evidence indicates that PGD should be aware of the Judgment since

CIVIL NO. 04-2188 (JP)            -11-

José Lloréns, a 50% shareholder of PGD, was an active participant in the original litigation involving Lloréns Inc. and the resulting consent Judgment. It is less clear whether AGC and Hernández are on notice of the Judgment. Given their connections to José Lloréns as lessees in his building and, in the case of Hernández, as son in law of José Lloréns, it seems likely that they may well be on notice of the Judgment. However, we need not determine whether the evidence is sufficiently clear and convincing to satisfy this element, because subsequent elements in the contempt standard are clearly not satisfied with regard to the additional nonparties.

### 2. Clear, Definite, Unambiguous Order

As discussed above, the consent Judgment is clear in terms of the actions that it prohibits – marketing and sale of generic equivalents of Novis products. It is also clear that this prohibition applies to Lloréns Inc. as well as any subsidiaries, owners, shareholders, representatives, agents, and assigns of Lloréns Inc.

However, this language cannot be said to clearly encompass PGD, AGC, or Hernández. These nonparties are not a subsidiary of Lloréns Inc. Nor are they owners or shareholders of Lloréns Inc. Nor are they representatives, agents, or assigns of Lloréns Inc. At best Novis could seek to stretch the meaning of the word representative to somehow encompass the nonparties. However, this strained

CIVIL NO. 04-2188 (JP)          -12-

interpretation would certainly not constitute a reading of the Judgment that is clear, definite, and unambiguous, as required by the second element of the contempt standard.  Id. (holding that the "clear and unambiguous" test cannot be applied in the abstract, and that "[t]he question is not whether the order is clearly worded as a general matter; instead, the 'clear and unambiguous' prong requires that the words of the court's order have clearly and unambiguously forbidden *the precise conduct on which the contempt allegation is based*.).

Accordingly, the Court finds that the evidence has not satisfied the second element of the contempt standard with regard to nonparties PGD, AGC, and Hernández.  This shortcoming also creates problems for the fourth element – showing an actual violation of the order – because the Court cannot determine that the nonparties actually violated the order if it is not entirely clear that the order applies to them.  In light of the failure to satisfy the second and fourth elements of the contempt standard, the Court **DENIES** Novis' motion to hold nonparties PGD, AGC, and Hernández in contempt.

This holding does not prevent Novis from bringing a separate action arguing that the settlement should be interpreted to extend to the additional nonparties.  See, e.g., Diva's Inc. v. City of Bangor, 411 F.3d 30, 37 (1st Cir. 2005) (analyzing claim for breach of contract due to alleged violation of settlement agreement).

...

CIVIL NO. 04-2188 (JP)            -13-

However, in the context of the instant motion for contempt, the Court cannot find that the evidence is sufficiently clear and convincing to conclude that actions by PGD, AGC, or Hernández constitute a violation of the consent Judgment.  See Saccoccia,433 F.3d at 27-28 ("a complainant must prove civil contempt by clear and convincing evidence . . . we must read any ambiguities or omissions . . . to the benefit of the person charged with contempt.") (internal citations omitted).

### C.  **Aiding and Abetting Theory**

Although the terms of the consent Judgment do not encompass PGD, AGC, and Hernández, Novis also argues that the Court may enforce the obligations of the Judgment against them because of authority granted under Federal Rule of Civil Procedure 71.  Rule 71 provides that "[w]hen an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party."  While Rule 71 establishes the procedure for enforcing an order against a nonparty, it does not define the scope of individuals who are bound by an order, or grant the Court authority over any particular categories of nonparties.  Because the terms of the consent Judgment do not include PGD, AGC, or Hernández, the circumstances of the motion for contempt against said nonparties do not fall within the scenario described by Rule 71 when an order "grants relief for a nonparty or may be enforced against a nonparty."

CIVIL NO. 04-2188 (JP)            -14-

However, Federal Rule of Civil Procedure 65(d) provides that an injunction is binding upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise. This rule is

> derived from the common-law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in "privity" with them, or subject to their control. Its essence is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.

Regal Knitwear Co. v. N.L.R.B., 324 U.S. 9, 14 (1945) (cited in G&C Merriam Co. v. Webster Dictionary Co., Inc., 639 F.2d 29, 36 (1st Cir. 1980)).

Applying the common law doctrine articulated in Rule 65, the First Circuit has confirmed that "[i]n order to enforce an order against a nonparty in a contempt proceeding, a court first must determine that [the nonparty] was in active concert or participation with the party specifically enjoined." Microsystems Software, Inc. v. Scandinavia Online AB, 226 F.3d 35, 41 (1st Cir. 2000). The First Circuit has further established that there are two elements that must be satisfied in order to invoke a theory of aiding and abetting an enjoined party.

> The first is state of mind: a nonparty must know of the judicial decree, and nonetheless act in defiance of it. The second is legal identification: the challenged action

CIVIL NO. 04-2188 (JP)          -15-

    must be taken for the benefit of, or to assist, a party subject to the decree.

Goya Foods, 290 F.3d at 75.  The Court will now proceed to apply these elements to the instant case.

With regard to the first element of knowledge of the judicial decree, the evidence in the instant case is mixed.  As described in the Court's discussion of whether the nonparties had notice for purposes of finding them in direct contempt of the Judgment, the connections between José Lloréns, who certainly had notice of the Judgment, and nonparties PGD, AGC, and Hernández, are sufficient to at least raise flags indicating that said nonparties may have been on notice of the Judgment.

However, with regard to the second element of an aiding and abetting theory, Novis has not offered sufficient evidence to find that the nonparties are legally identified with José Lloréns, let alone Lloréns Inc.  The "legally identified" element requires that the challenged action be taken for the benefit of, or to assist the party subject to the decree.  Here, Novis has offered no evidence that AGC or Hernández are operating for the benefit of José Lloréns or Lloréns Inc.  There are no allegations that they share profits or any other benefits of their sales with José Lloréns.  As to PGD, the evidence indicates that PGD is operating contrary to the requests and legal efforts by José Lloréns to dissolve the company.  On the basis of this evidence, the Court cannot find that the nonparties

CIVIL NO. 04-2188 (JP)          -16-

referenced in Novis' motion for contempt are acting for the benefit of or to assist any parties subject to the consent Judgment. Accordingly, the Court **DENIES** Novis' motion to extend the reach of the consent Judgment and hold the additional nonparties in contempt on an aiding and abetting theory.

**IV. CONCLUSION**

For the reasons stated herein, the Court **DENIES** Novis' motions for contempt.  This holding does not preclude any separate actions by Novis that have an independent jurisdictional basis.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 8th day of February, 2010.

s/Jaime Pieras, Jr.
JAIME PIERAS, JR.
U.S. SENIOR DISTRICT JUDGE